UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

In re:

VEBLEN EAST DAIRY LIMITED
PARTNERSHIP,
Tax ID/EIN: 20-8870979,

Debtor.

: Case No. 10-10146
: (Chapter 11)
:
:
:

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

### AGSTAR FINANCIAL SERVICES, PCA AND AGSTAR FINANCIAL SERVICES, FLCA'S MOTION TO EXCUSE COMPLIANCE WITH 11 U.S.C. § 543(a), (b) and (c)

AgStar Financial Services, FLCA and AgStar Financial Services, PCA ("AgStar") move the Court for the above-entitled relief as follows:

1.  The Debtor filed a voluntary Chapter 11 petition in bankruptcy on or about July 2, 2010.

2.  This matter arises under 11 U.S.C. § 543(d) and Bankruptcy Rules of Procedure 9013 and 9014.

3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the Order of General Reference, dated July 27, 1984, entered by United States District Court, District of South Dakota.

00676858.1

4. As of April 1, 2010, Debtor owed AgStar PCA the amounts depicted in the following chart:

| *Loan No. | Principal | Interest | Late Charge | Total | Daily Interest Per Diem | Daily Late Charge Per Diem |
|---|---|---|---|---|---|---|
| 1183225100 | $1,000,000.00 | $15,828.01 | $2,721.95 | $1,018,549.96 | $89.678 | $55.550 |
| 1183720200 | $8,422,542.49 | $133,410.09 | $22,933.61 | $8,578,886.19 | $755.315 | $467.910 |
| 1190674700 | $1,999,892.00 | $31,693.46 | $6,173.08 | $2,037,758.54 | $179.940 | $113.330 |
| 1190674800 | $549,419.00 | $8,706.96 | $1,525.37 | $559,651.33 | $49.434 | $31.130 |
| 1206905600 | $3,030,303.00 | $47,963.66 | $8,249.15 | $3,086,515.81 | $271.751 | $168.350 |
| 1217330800 | $1,500,000.00 | $23,368.92 | $4,350.51 | $1,527,719.43 | $128.297 | $89.550 |
| 1223531900 | $1,283,555.00 | $110,123.93 | $5,243.03 | $1,398,921.96 | $585.355 | $127.730 |
| 1223484700 | $4,130,377.79 | $158,967.36 | $31,449.29 | $4,320,794.44 | $744.250 | $632.540 |
| 7700371900 | $10,750,000.00 | $169,019.91 | $29,832.44 | $10,948,852.35 | $951.513 | $609.740 |
| Veblen East Loan Total Due 4/1/10 | $32,666,089.29 | $699,082.30 | $112,478.43 | $33,477,650.01 | | |

5. Interest, late charges and attorney's fees and costs continue to accrue since April 1, 2010. Moreover, AgStar has made net protective advances of approximately $1.5 million, exclusive of direct receivership fees and related costs.

6. The Debtor is also contingently indebted to AgStar FLCA by virtue of a Letter of Credit in the amount of $10,144,150.69 which has not been, but could be, drawn upon at any time.

7. In addition to the foregoing loan balances, the Debtor is also indebted to AgStar PCA for related services in the amount of $448,466.55 as of April 1, 2010, plus subsequent accruing related services.

8.      AgStar holds a valid and perfected first blanket agricultural security interest in the Debtor's personal property.  AgStar also holds numerous priority mortgages on the Debtor's real estate.  These security interests and mortgages secure the indebtedness owed to AgStar.

9.      The Debtor is and was insolvent at the time it filed its Chapter 11 petition.

10.     The Minnesota District Court in Blue Earth County, Fifth Judicial Circuit, CIV. 10-714, entered an Order appointing Value-Added Science & Technologies, L.L.C., acting through Steven Weiss, its Manager, as the Receiver in the estate of Veblen East Dairy Limited Partnership on or about March 3, 2010.

11.     The Debtor, by and through its general partner, The Dairy Dozen-Veblen LLP, consented to the appointment of the Receiver and the terms of the receivership.

12.     The Debtor and The Dairy Dozen-Veblen LLP were both represented by counsel at the time they stipulated to the appointment of the Receiver.

13.     The Receiver, under the supervision of the Minnesota State Court, has been operating the dairy and analyzing its financial underpinnings since being appointed.

14.     The Receiver and its principal, Steven Weiss, are very experienced and highly regarded in the animal industry.  Because they have been on board for several months, they understand the Debtor and the Debtor's operation, including the underlying economics and business model.

15.     The Receiver, who has been operating the Debtor for over four months, has accomplished numerous important tasks including: (1) assuming operation and control; (2) stabilizing the work force; (3) negotiating a settlement with the SD DENR on important environmental issues; (4) evaluating the Debtor's financial prospects on a going concern and liquidation basis; (5) protecting the Debtor from unfair transactions with insiders; (6) establishing effective relationships with vendors and secured creditors; and (7) submitting detailed reports on the Debtor's operation.

16.     Although the recipient of approximately $1.5 million in protective advances since March 1, 2010, the Debtor has been unable to reach break even without the burden of significant debt service.

17.     The evidence will show that the Debtor does not have a reasonable likelihood of rehabilitating.

18.     The Debtor is unable to provide adequate protection for use of cash collateral because of the restrictions imposed by 11 U.S.C. § 552(b) and cannot otherwise provide adequate protection.

19.     The Debtor is owned by foreign (Korean) limited partners who hold a 51% interest.  The balance of the Debtor is owned by The Dairy Dozen-Veblen, LLP, as general partner (49%).  There are significant questions involving who had the authority to authorize and execute the bankruptcy petition and who had the authority to continue to operate the Debtor post-filing.  Related issues include the effect of a foreclosure by the

limited partners on the interest of the general partner, the application of the limited partnership agreement and the effect of the state court receivership order.

20. 11 U.S.C. § 543(d)(1) provides in relevant part:

After notice and hearing, the bankruptcy court - (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue possession, custody or control of such property.

21. Rick Millner's inability to manage the various dairies and related entities and obligations consistent with his fiduciary duties and without regard to his self-interests has been exposed. Veblen West's response to the troubling issues surrounding Millner, was to appoint Michael Wyum as the new manager of West on the eve of the hearing on AgStar's Motion for Appointment of a Trustee. This move was obvious, token, and a distinction without a difference. Indeed, Wyum didn't even bother to show up for the final day of the hearing on the Motion for Appointment of the Trustee. Millner, however, remained front and center. In addition, Mr. Wyum, along with a clerical person employed by the Debtor, attended the Section 341 meeting, but were unable to explain or answer even the most simple inquiries.

22. The Debtor's latest ploy to obscure Millner's control over the dairy entities is to appoint Steven Nerger of Silverman Consulting as Chief Restructuring Officer ("CRO") for the Debtor. It is clear, however, that the CRO intends to leave PRM (Millner) in charge of the day to day operations of the Debtor. Moreover, it is also

obvious that the restructuring officer will not be independent because he will answer to The Dairy Dozen-Veblen (Millner) as the general partner.

23. Previous evidence before the Court has unequivocally demonstrated that Millner was the architect of the eve of bankruptcy fraudulent transactions designed to benefit other entities and his investment group to the multi-million dollar detriment of the Debtor.

24. The CRO's qualifications in general, let alone his experience and abilities to manage a multi-million dollar dairy, have not been disclosed. Moreover, the CRO has not been approved as a professional person under 11 U.S.C. § 327. Interestingly, PRM owned and directed by Rick Millner, will continue to manage the day-to-day operations of the Debtor going forward. PRM has not been approved as a professional under 11 U.S.C. § 327 in either Veblen East or Veblen West.

25. The Debtor's initial Motion for Authority to Use Cash Collateral and Request for Preliminary Hearing, which was deficient under the Local Rules of this Court, conceded the following at paragraph 15 on page 4 as follows:

> "The Debtor's facilities are in excellent condition, as is its cow herd. The Debtor has a solid group of employees and its production numbers are strong relative to the dairy production industry."

Based on the foregoing, the Debtor does not dispute that the Receiver is protecting the assets of the Debtor and its going concern value through his prior and continuing efforts.

26. It would be in the best interest of creditors and the estate to avoid a knee-jerk conversion from the current Receiver to an operating trustee or the CRO without careful planning.

27. Given all of the facts and circumstances in this case, it is in the best interest of the creditors to have the Receiver continue in possession, custody and control of the Debtor and its assets, at a minimum until the Court has had an opportunity to hear AgStar's Motion for Appointment of an operating trustee, any motion by the Debtor's limited partners to resolve conflicts in the management and control of the Debtor, and Debtor's preliminary Motion for Use of Cash Collateral.

28. Debtor's bankruptcy counsel also represents The Dairy Dozen-Veblen in its recent Chapter 11 filing. This, coupled with Millner's pervasive interest and influence, represents yet another impermissible conflict of interest that threatens the integrity of the process and calls into question the numerous Debtors' ability to avoid self-dealing and to fulfill their fiduciary duty in the context of operating the estates.

29. AgStar suspects that the Debtor will be bringing an expedited motion for preliminary use of cash collateral that comports with the Local Rules. AgStar is willing, with an acceptable budget, to allow preliminary use of cash collateral if the Receiver remains in place pending a final hearing. If the Receiver does not remain in place, AgStar intends to vigorously resist the Debtor's preliminary motion on the basis of

Section 552(b), inability of the debtor to properly reorganize and related defenses and issues.

WHEREFORE, AgStar prays that the Court grant this motion and for such further relief as the Court deems just and equitable in the premises.

Dated this 7th day of July, 2010.

                WOODS, FULLER, SHULTZ & SMITH P.C.

By /s/ ROGER W. DAMGAARD
Roger W. Damgaard (#340)
300 South Phillips Avenue, Suite 300
Post Office Box 5027
Sioux Falls, South Dakota 57117-5027
Attorneys for AgStar Financial Services, PCA
and AgStar Financial Services, FLCA
Telephone (605) 336-3890
Fax No. (605) 339-3357
E-mail: Roger.Damgaard@woodsfuller.com