UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

|  |  |  |
|---|---|---|
| | : | Case No. 10-10146 |
| In re: | | (Chapter 11) |
| | : | |
| VEBLEN EAST DAIRY LIMITED PARTNERSHIP, | : | |
| Tax ID/EIN: 20-8870979, | | |
| | : | |
| Debtor. | | |

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

**AGSTAR FINANCIAL SERVICES, PCA
AND AGSTAR FINANCIAL SERVICES, FLCA'S
MOTION FOR APPOINTMENT OF A TRUSTEE**

AgStar Financial Services, FLCA and AgStar Financial Services, PCA ("AgStar") by and through attorneys of record, Woods, Fuller, Shultz & Smith P.C., move for the appointment of a Trustee on the following grounds:

1.      The Debtor filed a voluntary Chapter 11 petition in bankruptcy on or about July 2, 2010.  Debtor's sister entity and dairy, Veblen West Dairy, LLP ("West"), filed a Chapter 11 petition with this Court, Case No. 10-10071, on or about April 7, 2010.

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the Order of General Reference, dated July 27, 1984, entered by United States District Court, District of South Dakota.

3.      This contested matter arises under 11 U.S.C. § 1104 as well as Bankruptcy Rules and Procedure 2007.1, 9013 and 9014.  This is a core proceeding.

00677601.1

4.      11 U.S.C. § 1104 provides in relevant part:

Appointment of a Trustee or Examiner

(a)  At any time after the commencement of the case, but before confirmation of a Plan, on request of a party in interest or the United States Trustee, and after notice and hearing, the Court shall order the appointment of a Trustee -

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the Debtor by current management, either before or after the commencement of the case, or similar case, but not including the number of holders of securities of the Debtor or the amount of assets or liabilities of the Debtor;

(2) if such appointment is in the interest of creditors, any equity security holders, other interests of the estate, without regard to the number of securities of the debt or amount of assets or liabilities of the Debtor.

5.      The Debtor is a large dairy located in northeast South Dakota (Marshall County).

6.      Debtor and West are part of an integrated dairy production system together with Debtor's general partner, The Dairy Dozen-Veblen, LLP, which has filed bankruptcy in the District of South Dakota, Case No. 10-10147, The Dairy Dozen-Milnor, LLP, which has filed bankruptcy in the District of North Dakota, Case No. 10-30377, The Dairy Dozen-Thief River Falls, LLP, which has filed bankruptcy in the District of Minnesota, Case No. 10-60438, along with New Horizon Dairy, LLP, Vantage Cattle Company, LLP, and Short Foot Calf Ranch, Inc.  All of the dairy entities are managed by Prairie Ridge Management, LLC ("PRM"), which in turn is directed and

managed by Rick Millner.  In addition, there is common, but not mirror image ownership and management of these various entities, including most particularly, Rick Millner.  The underlying owners of some of the entities are also personal guarantors of the AgStar debt and do business with some of the entities.

7.     Debtor and West are located in close proximity to one another.

8.     The Debtor's dairy operation encompasses all those things normally associated with the operation of a dairy, including cows in various stages of production, calves, feed, equipment, barns, parlors, milk, proceeds, feed and the employees necessary to manage and run the day to day operation of the dairy, including but not limited to, waste control and disposal.

9.     Debtor is indebted to AgStar in the approximate amount of $43 million. West is indebted to AgStar in the approximate amount of $18 million

10.     AgStar holds a valid and perfected first blanket security interest in all of the personal property owned by the Debtor.  AgStar also holds  priority mortgages on the real estate that underlies Debtor and West.

11.     Prior to filing, Debtor was under a State Court receivership ordered by the Minnesota District Court, CIV.10-714, and an ancillary appointment of that receiver by Order entered in Marshall County State Circuit Court on March 23, 2010.  Value-Added Science & Technologies, L.L.C., acting through Steven Weiss, its Manager, is serving as court-appointed Receiver.

12.     AgStar hereby incorporates the facts, allegations and law contained in its Memorandum of Law in Support of Motion for Appointment of Chapter 11 Trustee filed in Case No. 10-10071 at Docket No. 250.  As noted above and in that Memorandum, because of the highly-interrelated nature of the ownership and management of Debtor and West, the facts and circumstances warranting appointment of an operating trustee in that Chapter 11 case are just as pertinent here.

13.     The Debtor has encountered and continues to confront significant environmental difficulties with the South Dakota DENR.  It is reasonable to believe that if PRM (Millner) continues to manage the Debtor, these problems will be exacerbated.  For example, DENR has filed a Motion to Confirm the Inapplicability of the Automatic Stay (Case No. 10-10071, Doc. No. 261) in West's Chapter 11 case, noting that West, which is still being managed by PRM (Millner) is still not in compliance with DENR's directives, and asking the Court to declare the automatic stay does not inhibit DENR's ability to sanction West for its noncompliance.

14.     Although the Debtor has signed an Amended Settlement Agreement with the DENR temporarily resolving existing deficiencies by promising to resolve them going forward, the costs and expenses associated with compliance will be substantial and probably unaffordable under the Debtor's current financial structure.  When the Debtor fails to meet the deadlines or its obligations under the Amended Settlement Agreement, the existing dairy herd could be required to be reduced or eliminated going forward.

00677601.1                                              4

15.    The Debtor's environmental woes are mirrored by similar or worse environmental issues in sister bankruptcies in North Dakota, South Dakota and Minnesota.  The violations in those states also depict a history of noncompliance with rules, statutes and permits.  Minnesota only recently declared the bankrupt dairy located there a public health hazard.

16.    The Debtor is not in a position to offer adequate protection for use of cash collateral to AgStar on an ongoing basis.  Although South Dakota has apparently yet to take a position, the vast majority of the states that have confronted the issue of whether 11 U.S.C. § 552(b) cuts off a secured creditors' security interest in farm products, including post-petition milk and newly born livestock, have concluded that it does not.  Therefore, the Debtor cannot adequately protect AgStar for use of its cash collateral by offering it something it already has - post-petition milk and post-petition born livestock.

17.    AgStar is willing to work with a competent and independent *Trustee* to protect the assets of the estate and the related going concern value to the extent feasible.

18.    The Debtor lost substantial amounts in 2009 and market conditions in 2010 are only marginally improved.

19.    The Debtor's bookkeeping functions are performed by PRM, a company primarily owned and operated by Richard Millner.  Mr. Millner is also the authorized agent for the Debtor and some of the related entities.   Although Debtor has apparently retained a Chief Restructuring Officer ("CRO"), he will still take directives from

Debtor's general partner, The Dairy Dozen-Veblen, LLP.  In addition, the Debtor and CRO supposedly intend to use PRM, Inc., a company exclusively managed and primarily owned by Millner, for management services.  The Debtor's counsel represent both the Debtor and its general partner, The Dairy Dozen-Veblen, LLP.  This constitutes an irreconcilable conflict because what is in the best interest of the Debtor's creditors may not be in the best interest of the general partner.

20.    Based on information and belief, certain purchase agreements and assignments involving various owners and insiders of the dairies have been executed.

21.    For example, substantial sums owed by Debtor to certain insiders and/or guarantors were assigned to West in exchange for promissory notes.  Specifically, PRM had Debtor transfer to West  $4,639,568.76 of notes and accounts payable, which the Debtor owed to PRM, Dairy Dozen-Milnor, Vantage, Millner Farms, New Horizon, Shortfoot, and Michael Wyum, and also had Debtor transfer $2,610,948.46 in accounts Debtor owed various parties to Vantage.

22.    The accounts transferred were non-accruing, unsecured, and aged.  Debtor was not even a party to any of these agreements, and there is no resolution evidencing Debtor's consent to these transfers; although Millner did execute the assignments in his capacity as either Managing Partner or President of Vantage/Veblen West, the assignees, and on behalf of DD-Milnor; DD-TRF; himself personally; New Horizon; the Bull Pen; PRM; and Vantage as Assignors.

23.     In exchange for these assignments, PRM cancelled an equivalent amount of receivables Vantage and Veblen West owed to Debtor.  The West receivables PRM cancelled were accrued advances Debtor made for West's current operating expenses, including feed, employee wages, and fresh cows.  The Vantage cancelled receivables were cash advances as pre-payments for heifers that had not yet been delivered.

24.     PRM also had West issue notes payable to favored insiders for the payables assumed by West.  Of the notes payable transferred, none of them have been paid except for payment to New Horizon, while PRM wrote off debt owed by Vantage to Debtor.

25.     PRM therefore had Debtor transfer non-accruing, insider, aged debt in exchange for an offset of receivables representing current cash advances made by Debtor to sustain Veblen West's and Vantage's operations, even though Debtor was insolvent at the time, and even though Debtor and West and Debtor and Vantage did not share common ownership or creditors.  These transfers reduced Debtor's current accounts receivable, which it was relying on to obtain cash from West so that it could pay its bills.

26.     These transactions were all orchestrated by Millner in order to funnel funds away from Debtor to favored sister entities and to benefit favored insiders, while putting Debtor in a cash crunch.

27.     Based on information and belief, there are similar insider payments, transfers and assignments that are suspect.

28.     It appears that PRM, as directed by Mr. Millner, has unilaterally removed and/or encouraged many employees from Debtor to move to West.

29.     It also appears that since the date of West's Chapter 11 filing, PRM, as directed by Millner, has had West use over $300,000 in feed owned by the Debtor and located at a depot in Veblen, SD, without having West pay the Debtor, further crippling Debtor financially.  (Case No. 10-0071 at Doc. 256).  As a result, the party that directed West to use Debtor's property without paying is the party that will also be deciding whether the Debtor should pursue West for payment.

30.     These transactions, which are only examples not an exhaustive listing, demonstrate that, Debtor, West and related entities, including PRM, their owners, and their guarantors are so inextricably intertwined so as to interfere with the overall management and control of the borrower dairies, including the Debtor.

31.     The Debtor in possession has a fiduciary duty to the bankruptcy estate.  The fiduciary obligation consists of a duty of care and duty of loyalty.  For a debtor in possession, this duty includes an obligation to refrain from self-dealing to avoid conflict of interest, to avoid the appearance of impropriety, to treat all parties to the case fairly and to maximize the value of the estate.

32.     Given PRM's management contracts and Mr. Millner's involvement in all of these entities, including the Debtor, it is doubtful that these fiduciary obligations can be met.

33.     The foregoing constitutes cause for appointment of a Chapter 11 trustee. Appointment of a Chapter 11 trustee would be in the best interest of the creditors and the estate.

WHEREFORE, AgStar prays that the Court appoint a trustee and for such other relief as the Court deems just and equitable in the premises.

Dated this 9th day of July, 2010.

WOODS, FULLER, SHULTZ & SMITH P.C.

By /s/ ROGER W. DAMGAARD

Roger W. Damgaard (#340)
300 South Phillips Avenue, Suite 300
Post Office Box 5027
Sioux Falls, South Dakota 57117-5027
Telephone (605) 336-3890
Fax No. (605) 339-3357
E-mail: Roger.Damgaard@woodsfuller.com

and

Gary W. Koch
Dustan J. Cross
GISLASON & HUNTER LLP
2700 S. Broadway
P. O. Box 458
New Ulm, MN 56073-0458
Phone: 507-354-3111
Fax:  507-354-6310

ATTORNEYS FOR AGSTAR FINANCIAL
SERVICES, PCA AND AGSTAR
FINANCIAL SERVICES, FLCA