UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

|  |  |
|---|---|
| : | Case No. 10-10146 |
| In re: | (Chapter 11) |
| : |  |
| VEBLEN EAST DAIRY LIMITED PARTNERSHIP, : |  |
| Tax ID/EIN: 20-8870979, |  |
| : |  |
| Debtor. |  |

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

**AGSTAR'S RESPONSE AND OBJECTION
TO DEBTOR'S MOTION FOR AUTHORITY
TO USE CASH COLLATERAL AND
REQUEST FOR PRELIMINARY HEARING
(PRELIMINARY AND FINAL)**

AgStar Financial Services, PCA and AgStar Financial Services, FLCA

("AgStar"), by and through attorneys of record, Woods, Fuller, Shultz & Smith P.C.,

object and respond to Debtor's Motion for Authority to Use Cash Collateral and Request

for Preliminary Hearing as follows:

1.      Denies each and every allegation and statement contained in the Debtor's

Motion except as specifically admitted in this response and objection.

2.      As to paragraph 1, AgStar admits that the Debtor is moving for use of cash

collateral.

3.      As to paragraph 2, AgStar admits the Bankruptcy Rules of Procedure and

the Court's Orders will dictate the timing of hearings and objections.

00678579.1

4.      As to paragraph 3, AgStar has insufficient knowledge to admit or deny and therefore denies the same.

5.      As to paragraph 4, AgStar admits the same.

6.      As to paragraph 5, AgStar admits that the Debtor is requesting the relief stated.

7.      As to paragraph 6, AgStar admits that this is what the Debtor is requesting.

8.      As to paragraph 7, AgStar admits that this is what the Debtor is requesting but specifically states that the adequate protection being offered by the Debtor is inadequate.

9.      As to paragraph 8, AgStar admits that Value-Added Science & Technologies, LLC, through its Manager, Steve Weiss, served as Receiver until shortly after the filing.  AgStar further admits that the Receiver turned over possession of the Debtor's property to the Debtor as required by 11 U.S.C. § 543(a).  AgStar has insufficient knowledge or information as to what parties have been served by the Debtor. AgStar affirmatively states that the Debtor, at least from a supervisory standpoint, is apparently being managed by a Chief Restructuring Officer ("CRO").   The CRO is still being directed by the Debtor's general partner, The Dairy Dozen-Veblen, LLP (Rick Millner).  Moreover, it appears that Prairie Ridge Management, primarily owned and exclusively operated by Rick Millner, will provide the day-to-day management of the Debtor's business activity.

10.     As to paragraph 9, AgStar admits the same.

11.     As to paragraph 10, AgStar admits the same, except that AgStar is unsure exactly how many cows the Debtor is currently milking or how many cows it expects to milk in the future.

12.     As to paragraph 11, AgStar has insufficient knowledge to admit or deny the same.

13.     As to paragraph 12, AgStar admits Prairie Ridge Management Company, LLC, managed the Debtor prior to the appointment of a Receiver.  AgStar has insufficient knowledge or information as to what role the Debtor would have the CRO or Prairie Ridge play going forward.

14.     As to paragraph 13, AgStar admits the same.

15.     As to paragraph 14, AgStar has insufficient knowledge or information at this time to admit or deny these allegations.

16.     As to paragraph 15, AgStar admits the same.

17.     As to paragraph 16, AgStar has insufficient knowledge or information to admit or deny.

18.     As to paragraph 17, AgStar has insufficient knowledge or information to admit or deny.

19.     As to paragraph 18, AgStar has insufficient knowledge or information to admit or deny.

20.     As to paragraph 19, AgStar has insufficient knowledge or information to admit or deny.

21.     As to paragraph 20, AgStar denies the same.

22.     As to paragraph 21, AgStar admits that AgStar was the beneficiary of a milk assignment from the Debtor.  AgStar affirmatively states that the milk assignments are common methods by which borrowers in the dairy industry repay loans to their creditors.  AgStar denies the balance of paragraph 21.

23.     As to paragraph 22, AgStar admits that there are milk assignments.

24.     As to paragraph 23, AgStar admits the same.

25.     As to paragraph 24, AgStar has insufficient knowledge or information to admit or deny.

26.     As to paragraph 25, AgStar admits that this is what the Debtor is requesting but affirmatively states that it would appear that the cash collateral the Debtor is seeking to use is generated from cattle and milk proceeds as opposed to the other types of collateral proceeds described in the paragraph.

27.     As to paragraph 26, AgStar admits that it has a perfected first security interest in farm products, including milk and calves and their proceeds, both pre- and post-petition.

28.     As to paragraph 27, AgStar admits that there may be other parties that have purchase money security interests or lease interests in equipment.  Lien priorities have yet to be determined, however.

29.     As to paragraph 28, AgStar admits that this is what the Debtor is seeking.

30.     As to paragraph 29, AgStar admits that the Debtor needs cash to pay operating expenses.

31.     As to paragraph 30, AgStar denies the same.

32.     As to paragraph 31, AgStar denies the same.

33.     As to paragraph 32, AgStar admits that this is what the Debtor is requesting but affirmatively states that the Debtor is not providing adequate protection to AgStar.

34.     As to paragraph 33, AgStar denies the same.

35.     As to paragraph 34, AgStar denies the same.

36.     As to paragraph 35, AgStar admits the same.

37.     As to paragraph 36, AgStar admits the same.

38.     As to paragraph 37, AgStar admits the same.

39.     As to paragraph 38, AgStar has insufficient knowledge or information to admit or deny.

40.     As to paragraph 39, AgStar denies the same.

AFFIRMATIVE RESPONSES

41.    As of April 1, 2010, Debtor owed AgStar PCA the amounts depicted in the following chart:

| *Loan No. | Principal | Interest | Late Charge | Total | Daily Interest Per Diem | Daily Late Charge Per Diem |
|---|---|---|---|---|---|---|
| 1183225100 | $1,000,000.00 | $15,828.01 | $2,721.95 | $1,018,549.96 | $89.678 | $55.550 |
| 1183720200 | $8,422,542.49 | $133,410.09 | $22,933.61 | $8,578,886.19 | $755.315 | $467.910 |
| 1190674700 | $1,999,892.00 | $31,693.46 | $6,173.08 | $2,037,758.54 | $179.940 | $113.330 |
| 1190674800 | $549,419.00 | $8,706.96 | $1,525.37 | $559,651.33 | $49.434 | $31.130 |
| 1206905600 | $3,030,303.00 | $47,963.66 | $8,249.15 | $3,086,515.81 | $271.751 | $168.350 |
| 1217330800 | $1,500,000.00 | $23,368.92 | $4,350.51 | $1,527,719.43 | $128.297 | $89.550 |
| 1223531900 | $1,283,555.00 | $110,123.93 | $5,243.03 | $1,398,921.96 | $585.355 | $127.730 |
| 1223484700 | $4,130,377.79 | $158,967.36 | $31,449.29 | $4,320,794.44 | $744.250 | $632.540 |
| 7700371900 | $10,750,000.00 | $169,019.91 | $29,832.44 | $10,948,852.35 | $951.513 | $609.740 |
| Veblen East Loan Total Due 4/1/10 | $32,666,089.29 | $699,082.30 | $112,478.43 | $33,477,650.01 | | |

42.    Interest, late charges and attorney's fees and costs continue to accrue since April 1, 2010.  Moreover, AgStar has made net protective advances of approximately $1.5 million, exclusive of direct receivership fees and related costs.

43.    The Debtor is also contingently indebted to AgStar FLCA by virtue of a Letter of Credit in the amount of $10,144,150.69 which has not been, but could be, drawn upon at any time.

44.     In addition to the foregoing loan balances, the Debtor is also indebted to AgStar PCA for related services in the amount of $448,466.55 as of April 1, 2010, plus subsequent accruing related services.

45.     The Debtor has executed Security Agreements in favor of AgStar PCA and AgStar FLCA pledging a first security interest and blanket agricultural personal property.

46.     AgStar perfected its security interests by timely filing UCC-1 financing statements with the South Dakota Secretary of State.

47.     In determining adequate protection for the interests of AgStar, the Court should follow the holding in *In re Martin*, 761 F.2d 472, 476-477 (8th Cir. 1985) and (1) establish the value of AgStar's interest as a secured creditor; (2) identify the risk to AgStar's value resulting from the Debtor's request for use of cash collateral; and (3) determine whether Debtor's adequate protection proposal protects the value as nearly as possible against the risks to the value.

48.     AgStar has not consented to the Debtor's use of cash collateral and Debtor is hereby not currently authorized to use any cash collateral that is subject to AgStar's lien.

49.     The Debtor has the burden on the issue of adequate protection.  See 11 U.S.C. § 363(p).

50.    The Debtor has the obligation to provide adequate protection to AgStar prior to using any of its cash collateral consistent with 11 U.S.C. § 363(e) that provides in relevant part:

> Notwithstanding any other provision to this section, at any time, on request of an entity that has in interest in property used, sold, or leased, or proposed to be used, sold, or leased, the trustee, or the Court, with or without hearing, will prohibit or condition such use, sale or lease as necessary to provide protection of such interest....

51.    AgStar admits that the Debtor has limited amount of cash on hand, and that it will generate some cash from ongoing operations going forward. As to the budget, at this point AgStar has insufficient knowledge or information whether the projected cash is accurate or adequate to fund the Debtor going forward, and puts Debtor to its strictest proof as to those allegations.

52.    The Debtor's offer of adequate protection is inadequate.  Under 11 U.S.C. § 552(b), AgStar already has a security interest in post-petition milk, cattle, calves and their proceeds.   The vast majority of the cases support this position. *See, e.g., Smith v. Dairymen, Inc.,* 790 F.2d 1107 (4th Cir.1986) (Virginia law); *In re Nielsen*, 48 B.R. 274 (D.N.D.1984); *In re Wiegmann,* 95 B.R. 90 (Bankr.S.D.Ill.1989); *In re Rankin*, 49 B.R. 565 (Bankr.W.D.Mo.1985); *In re Potter*, 46 B.R. 536 (Bankr.E.D.Tenn.1985); *In re Hollie*, 42 B.R. 111 (Bankr.M.D.Ga.1984).  As to the Debtor's payment of interest on AgStar's loans, Debtor is simply using AgStar's secured collateral to pay AgStar while failing to maintain the value of AgStar's secured assets as of the filing date.

53.     The Debtor should be required, consistent with 11 U.S.C. § 363(c)(4) to segregate and account for any cash collateral in its possession, custody, or control.  This includes establishing a debtor-in-possession (DIP) account where all of AgStar's cash proceeds are deposited and only disbursing funds from this account upon AgStar's consent or Court Order.

54.     The budget attached to the Debtor's motion is compounded and confusing. It is difficult to tell the timing, sources of income and categories of expenses with any clarity.  The Debtor should be required to provide submissions that are clearer and more discernible.

55.     The Debtor does not have a reasonable likelihood of being able to reorganize.

56.     AgStar incorporates its Motion for Appointment of Trustee as if fully set forth.

57.     It is unlikely that the Debtor would or could prevail at a final hearing on the use of cash collateral and therefore, cash collateral usage should be denied.

58.     AgStar is substantially undersecured.  The Debtor is substantially insolvent. The Debtor has no equity cushion to provide adequate protection to AgStar.

59.     For all of the foregoing reasons, the Debtor should be denied use of cash collateral on a preliminary and final basis.

WHEREFORE, AgStar prays:

00678579.1                                          9

1.     That the Court deny the Debtor's Motions (both final and interim) unless and until the Debtor provides adequate protection of AgStar's interest;

2.     That if the Court grants use of cash collateral that it do so only in an amount absolutely necessary to prevent irreparable harm to the estate on an interim basis (fourteen calendar days), and then without the presumption that the Debtor is likely to prevail at a final hearing to be scheduled before the expiration of the interim period;

3.     If the Court allows the Debtor preliminary use of cash collateral, AgStar should be granted a super priority administrative expense claim to the extent that the adequate protection provided proves to be inadequate.

4.     That if the Court grants interim use of cash collateral, that it schedule a final hearing before the expiration of the interim authorization;

5.     That the Court hold the Debtor to its burden on the issue of adequate protection;

6.     That the Court find that AgStar holds a valid and perfected first security interest in all of the Debtor's personal property, including but not limited to farm products, milk, calves and proceeds.

7.     That the Court hold that AgStar already has a continuing post-petition security interest in milk, milk products, cows and calves and that providing post-petition liens in these kinds of collateral does not constitute adequate protection;

8.     That the Court require the Debtor to segregate and account for AgStar's cash collateral; and

9.     For such further relief as the Court deems just and equitable in the premises.

Dated this 12th day of July, 2010.

WOODS, FULLER, SHULTZ & SMITH P.C.

By /s/ ROGER W. DAMGAARD
  Roger W. Damgaard (#340)
  300 South Phillips Avenue, Suite 300
  Post Office Box 5027
  Sioux Falls, South Dakota 57117-5027
  Telephone (605) 336-3890
  Fax No. (605) 339-3357
  E-mail: Roger.Damgaard@woodsfuller.com
and

Gary W. Koch
Dustan J. Cross
GISLASON & HUNTER LLP
2700 S. Broadway
P. O. Box 458
New Ulm, MN 56073-0458
Phone: 507-354-3111
Fax:  507-354-6310

ATTORNEYS FOR AGSTAR FINANCIAL SERVICES, PCA AND AGSTAR FINANCIAL SERVICES, FLCA