**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH DAKOTA**

| | | |
|---|---|---|
| In re: | ) ) ) | Bankr. No. 10-10146<br>Chapter 11 |
| VEBLEN EAST DAIRY LIMITED PARTNERSHIP<br>Tax ID/EIN 20-8870979, | ) ) ) ) ) ) ) ) ) | **HANUL PROFESSIONAL LAW CORPORATION AND LIMITED PARTNERS' MEMORANDUM OF LAW IN SUPPORT OF JOINDER IN AGSTAR'S MOTION TO EXCUSE COMPLIANCE AND OBJECTION TO USE OF CASH COLLATERAL** |
| Debtor. | ) ) | |

COMES NOW HANUL PROFESSIONAL LAW CORPORATION, A/K/A HANUL LAW OFFICE ("Hanul") and the 32 limited partners as set forth on Attachment A ("Limited Partners") of Veblen East Dairy Limited Partnership, the Debtor herein, and pursuant to the Court order hereby submit this pre-hearing memorandum highlighting the authority issues raised in Hanul and Limited Partners' Joinder in the Motion of Agstar to excuse compliance with section 543 and objection to use of cash collateral. Hanul and Limited Partners received no notice prior to the bankruptcy filing, and local counsel Jeff Sveen received only a late Friday phone call after the filing on Friday, July 2, 2010. Debtor knew that Limited Partners and Hanul were located in Korea and were unable to respond immediately, and the pleadings served by mail are still being received as of July 12, 2010. Limited Partners and Hanul intend to file an appropriate motion objecting to the authorization to enter into the bankruptcy, and desire the status quo to be maintained until the Court has had time to fully address the authority issues. In support of their position, Limited Partners and Hanul submit the following:

**FACTUAL BACKGROUND**

Limited Partners are 32 Korean individuals who each invested $500,000 in the Debtor Partnership in connection with the EB-5 program sponsored by the United States Government.  They entered into a limited partnership agreement and amendment to limited partnership agreement which will be submitted as an exhibit. That agreement provides that the General Partner, which was The Dairy Dozen-Veblen LLP ("Dairy Dozen"), has certain duties and responsibilities, certain powers, and must submit certain decisions to the Limited Partners.  The Limited Partners own slightly over 60% of the ownership interest in the Debtor limited partnership.  Hanul law firm also loaned to Dairy Dozen, $2 million and took back a pledge and guaranty agreement from both Milner and Dairy Dozen, pledging Dairy Dozen's general partnership interest. When Dairy Dozen defaulted, on May 11, 2010, Hanul notified Dairy Dozen that it was taking over control and would be exercising all rights of Dairy Dozen as a general partner of Debtor.  Dairy Dozen apparently ignored this request.

Previously, on March 2, 2010, Dairy Dozen and Debtor had stipulated to the appointment of a receiver as requested by AgStar Financial Services, et al, in the Fifth Judicial District Court for the County of Blue Earth, State of Minnesota, with the "exclusive authority to operate and manage" Debtor.  Despite these notices, on July 1, 2010, Dairy Dozen as general partner of Debtor, purported to discharge the receiver, accept the resignation of Rick Milner as managing general partner, and hire a chief restructuring officer.

On July 2, 2010, both Dairy Dozen and Debtor filed for Chapter 11 Bankruptcy. The demands of the automatic stay and the questions of the authorization have led to these hearings.

## ANALYSIS

**I.     The General Partner Lacked the Authority to Authorize and File the Bankruptcy Petition Under the Partnership Agreement.**

On January 30, 2007, the general partner Dairy Dozen and the Limited Partners agreed to form a limited partnership known as the Veblen East Dairy Limited Partnership ("Partnership" or "Debtor"). The Partnership's governing document is the Limited Partnership Agreement, which memorialized the agreement between all parties. It is well settled under South Dakota law that a partnership agreement is a binding contract. *Campion v. Parkview Apts.*, 1999 SD 10, ¶ 25, 588 N.W.2d 897, 902 (citation omitted).

Article 7 of the Partnership Agreement governs the authority of the General Partner to manage and control the business and affairs of the Partnership. Subsection 7.3 states that the General Partner does not have the authority to:

(a)  Do any act in contravention of the Agreement, any loan agreement or any other agreement by which the Partnership is bound.

(b)  ***Do any act which makes it impossible to carry on the ordinary business of the Partnership***. (emphasis added)

(c)  Confess a judgment against the Partnership;

(d)  Possess Partnership property or assign the rights of the Partnership for other than Partnership purpose.

(e)  Admit a person as a Partner except as provided in the Agreement.

3

Here, by executing the bankruptcy petition, the Dairy Dozen has made it impossible for the Partnership to carry on the ordinary business of the Partnership.  Therefore, the Dairy Dozen violated the Partnership Agreement and does not have authority to unilaterally force the Partnership into bankruptcy.

Additionally, the Dairy Dozen did not have the authority to execute the bankruptcy petition under Article 7.9 of the Partnership Agreement.  Article 7.9 of Partnership Agreement states:

> "A General Partner may not sell, **assign, transfer,** or otherwise dispose of this Partnership Interest." (emphasis added)

On July 2, 2010, Dairy Dozen filed a voluntary Chapter 11 petition.  In doing so, the General Partner's partnership interests were assigned or transferred to a new entity—a debtor in possession.  The debtor in possession has different and conflicting loyalties than the general partner.  The debtor in possession has a fiduciary duty to creditors, the general partner has a fiduciary duty to the Limited Partners.  As such, under the partnership agreement, Dairy Dozen, without the consent of or notice to the Limited Partners, did not have the authority under the Partnership Agreement to place the Debtor into Bankruptcy.

Finally,  Article 8.1 of Partnership Agreement in pertinent part states:

> "**Policy Decisions.**   Notwithstanding the powers and authority granted to the General Partner in paragraphs 7.1 and 7.2, the Limited Partners have the right, together with the General Partner, to vote on the policy matters affecting the Partnership:
>
> (a) Merger or consolidation of the Partnership with another Entity or the exchange of interests in the Partnership for interests in other Entities.

> (b) **Sale, lease, exchange, or other disposition of all or substantially all of the assets of the Partnership.**(emphasis added)
>
> (c) **The voluntary dissolution of the Partnership.** (emphasis added)
>
> (d) Any other matter set forth in this Agreement where the Limited Partners have the right to vote."

Under Article 8.1, any decision to file a bankruptcy petition would require a joint decision of the General and Limited Partners. The effect of bankruptcy on the Partnership would cause all or substantially all of the assets of the Partnership to be transferred to the new entity, the debtor in possession. Furthermore, bankruptcy may cause the Partnership to dissolve. Here, there is no dispute that Diary Dozen has failed to notify, or seek consent of the limited partners before filing the bankruptcy petition. (There are also questions about the authority under the resolutions filed with the petition as to the appropriate authority, given seemingly contrary resolutions filed in this Court subsequent to the petition).

II. **The General Partner Lacks the Authority to Authorize and Execute the Bankruptcy Petition Under South Dakota Statute.**

Dairy Dozen also did not have authority to execute the bankruptcy petition because it was not a general partner at the time of the execution of the petition. Bankruptcy Rule 1004(a) formerly provided that any "general partner" may file a voluntary petition on behalf of a partnership. But no federal law defines "general partner;" this is exclusively the task of state partnership law. When the rule was amended in 2002, the Comments stated that there is no provision in the Code that sets forth how a partnership commences a voluntary case. The Comments to Rule 1004

5

then go on to cite Supreme Court authority that the Court looked to applicable nonbankruptcy law in the corporate context to determine authority and cited with favor lower courts who'd applied the principle in the partnership context. It is submitted that the Court should look to South Dakota law to determine authority of this South Dakota limited partnership debtor. See *Matter of Phillips*, 966 F. 2d 926, 934 (5th Cir. 1992) ("look to state law to determine which people have authority to seek federal bankruptcy protection on behalf of state-created entities").

Under the South Dakota Uniform Limited Partnership Act, SDCL 48-7-402, the withdrawal of a general partner occurs, and the person ceases to be a general partner of a limited partnership when the general partner "**Files a voluntary petition in bankruptcy**". SDCL 48-7-402(4)(a).

Here, it is undisputed that the Dairy Dozen filed a voluntary Chapter 11 petition in bankruptcy on July 2, 2010 (apparently simultaneously with the Debtor). Under South Dakota law, that date effectively marks the last date the Dairy Dozen was a general partner of Partnership. Therefore, on July 2, 2010, the Dairy Dozen had no authority to file the bankruptcy petition in this matter, or participate in any of the Partnership decisions, or even participate as debtor in possession in seeking turnover from the receiver appointed in Minnesota. See *In re Harms*, 10 B.R. 817 (Bkrtcy. Colo. 1981) (sole general partner of limited partnership who becomes debtor-in-possession of personal estate under Chapter 11 generates "an inherent conflict of interest which precludes him from remaining as general partner" because partners owe fiduciary duty to co-partners and debtors-in-possession owe fiduciary duty to creditors); I*n re Map 1978 Drilling Partnership*, 95 B.R. 432, 435 (Bankr.N.D.Tex.1989) (following *Harms* in

6

requiring avoidance of conflict-of-interest for debtor-partner in Chapter 11 proceedings by conditioning reorganization of limited partnerships on naming of new sole general partner); *In re Royal Gorge Assoc.*, 77 B.R. 277, 278 (Bankr.D.Colo.1987) ("flagrant conflict of interest" for law firm to represent sole general partner, who was also creditor of partnership, in his voluntary Chapter 7 case, while at the same time representing partnership in its Chapter 11 case). Creditors are wholly dependent on the party controlling an estate in bankruptcy proceedings to protect their interests. Likewise, partners, especially limited partners, must rely on general partners to protect all partners' interests in partnership property. Both the creditors and the partners are interested in the same partnership property." Cited in *Phillips*, supra.

Because Dairy Dozen is no longer a General Partner, the Court should maintain the receivership status quo until it determines the full status of the bankruptcy case of this Debtor.

### III. Debtor Lacks the Authority to Authorize and Execute the Bankruptcy Petition Under the Guaranty and Pledge Agreement.

On April 30, 2009, Hanul entered into a Loan Agreement with the Debtor whereby Hanul agreed to lend $2,000,000.00 to the Debtor. As part of the Loan Agreement, Dairy Dozen executed a Guarantee and Pledge Agreement whereby Hanul pledged of all of its general partnership interests in the Partnership to secure said payments due under the Loan Agreement. According to the Loan Agreement, the loan was to be repaid by December 31, 2009. The payment was not made and the Debtor was in Default.

On May 11, 2010, Hanul notified the Debtor and Dairy Dozen that it was taking control of all voting powers and ownership rights of the general partnership under

Paragraph 7 of Guaranty and Pledge Agreement to protect its interests in the Partnership. Paragraph 7 states, in pertinent part, that Hanul may, at its sole election, "vote the Securities and exercise or cause its nominee to exercise all or any power with the same force and effect as an absolute owner." paragraph 7(a). As a result of this provision, Hanul, not the Dairy Dozen, was entitled to vote and exercise all the power granted to the Dairy Dozen under the Partnership Agreement as of May 11, 2010. Despite notification of this provision, the Dairy Dozen seemingly ignored the notice and in violation of the Guaranty and Pledge Agreement filed the bankruptcy petition on July 2, 2010–long after receiving Hunal's notice. Because Dairy Dozen did not have authority to exercise the bankruptcy petition, this Court should preserve the status quo with the receiver and affirm AgStar's motion at least until the Court has time to determine the full status of the bankruptcy filing of this Debtor.

**IV.   The Debtor, Following its Voluntary Consent to the Receiver's Appointment, Did not have the Management Authority to Decide to File the Bankruptcy Petition.**

On March 2, 2010, the Debtor stipulated to an order in Fifth Judicial District Court for the County of Blue Earth, Minnesota, which was signed by the District Judge on March 3, 2010. That order provided in part that the Receiver had "the exclusive authority to operate and manage (Debtor)…the authority to take such action as is reasonable and necessary to preserve and protect the assets of (Debtor)…and the authority to act in the capacity of the chief executive officer of (Debtor) as to any and all matters not specifically set forth herein." The order further enjoined all persons, including those acting in concert with the Debtor or the Debtor, from "interfering or hindering in any way with the exercise by the Receiver of any of his authorities or

responsibilities." Thus, from that point forward, the Receiver, not Dairy Dozen, had the powers and authority of the General Partner of Debtor.

Hanul and Limited Partners believe that a court appointed receiver has authority to commence a bankruptcy case over the objections of the limited partners. *In re Monterey Equities-Hillside,* 73 B.R. 749 (Bkrtcy. N.D. Cal. 1987) (because the general partner objected the court held the case must be treated as an involuntary case). It seems logical that once the receiver is appointed, particularly as here where the receiver was appointed by consent of the General Partner and the decision was agreed to by the Limited Partners, that receiver with "exclusive" control of the Debtor is the one who must consent and authorize a filing of a bankruptcy petition.[1] Because that was not done in this circumstance, this Court should preserve the status quo with the receiver and affirm AgStar's motion at least until the Court has time to determine the full status of the bankruptcy filing of this Debtor.

## **CONCLUSION**

For the reasons set forth, Hanul and Limited Partners respectfully request this Court to preserve the status quo with the receiver and affirm AgStar's motion at least until the Court has time to determine the full status of the bankruptcy filing of this Debtor

[SIGNATURE PAGE TO FOLLOW]

---

[1] There is contrary authority that holds that a state court receivership cannot deprive a Debtor of its right to file bankruptcy under the Federal Bankruptcy Code. Most of such cases were not dealing with as broad a receivership order as in this case, and Hanul and Limited Partners have found none which involved a "consent" receivership as the receivership in this case.

Dated this 13th day of July, 2010.

      /s/ Terry N. Prendergast
Terry N. Prendergast
Paul V. Goldammer
Murphy, Goldammer & Prendergast, LLP
101 North Phillips Avenue, Suite 402
P.O. Box 1535
Sioux Falls, SD  57101-1535
PHONE: (605) 331-2975 FAX: (605) 331-6473
E-MAIL:  terry@mgplawfirm.com
*Attorneys for Hanul Professional Law*
   *Corporation, et al.*

**ATTACHMENT A**

Hanul Professional Law Corporation, a/k/a Hanul Law Office; and

32 Limited Partners of Veblen East Dairy Limited Partnership, namely:

- Yong Jin Huh
- Jang Woo Cho
- Seung Hee Chang
- Jae Keun Park
- Ye Na Choi (Kang)
- Mi Hye Kim (So)
- Sung Tae Kim
- Young Bo Kim
- Kyung Min Lee
- Sung Jun Moon
- Young Jin Lee
- Jung Sook Park
- Greena Cha
- Sung Hee Lim
- Sun Kyung Lee
- Hoon Sup Oh
- Hee Sun Kim
- Sun Kap Lee
- Won Jae Kim
- Jong Soo Lee
- Yong Ho Kim
- Young Hee Park
- Sungtae Kim
- Jee Hyun Kim
- Eunjoo Sohn
- Taemoo Kim
- Sinyong Moon
- Ja Ryoung Chung
- Heejun Lee
- Ok Heui Kim
- Cheyeon Lee
- Yun Kyung Cho