UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

| | |
|---|---|
|                     : | Case No. 10-10146 |
| In re: | (Chapter 11) |
|                     : | |
| VEBLEN EAST DAIRY, LLP, | **BRIEF IN OPPOSITION TO** |
| Tax ID/EIN: 20-8870979,      : | **DEBTOR'S MOTION FOR** |
| | **AUTHORIZATION TO USE** |
|          Debtor.       : | **CASH COLLATERAL** |

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

Debtor Veblen East Dairy, LLP, has filed a motion for authority to use cash collateral. AgStar Financial Services, PCA and AgStar Financial Services, FLCA (collectively "AgStar"), by and through its attorneys of record submits this brief in response to Debtor's motion.

**I.    Introduction.**

This cash-collateral matter, like the one involving Debtor's sister entity, Veblen West Dairy Limited Partnership (Case No. 10-10071) revolves around two primary issues: (1) under 11 U.S.C. § 552(b) does AgStar have a security interest in Debtor's post-petition milk proceeds; and, if so (2) has the Debtor offered sufficient adequate protection for its use of those proceeds?

First, when a literal reading of a statute resolves the question before the court, that is the end of the inquiry. This Court ruled in West's bankruptcy under similar facts that a literal reading of § 552(b) warrants a finding that AgStar has a lien in Debtor's post-

petition milk.  (Case No. 10-10071 at Doc. 265.)  The Court should also resist any request to apply the "equities" exception of Section 552(b) to cut off AgStar's lien.  The Debtor cannot meet its burden of showing that it or third parties have made truly independent contributions to the value of the cash collateral at issue.

Second, a Debtor may provide adequate protection by (1) providing adequate protection payments large enough to protect the security interest's value, (2) demonstrating equity in other assets sufficient to protect the security interest's value, or (3) granting a replacement lien sufficient to protect the security interest's value.  The Debtor is proposing adequate protection payments, but they will be dwarfed by the amount of cash collateral the Debtor wants to use.  The Debtor has acknowledged in response to AgStar's Motion to Excuse Turnover under 11 U.S.C. § 543 (Doc. 52 at 4.)[1] that AgStar is likely undersecured, and that its estate has a negative net worth, so there is no equity in other assets.  And the Debtor's grant of a replacement lien in milk proceeds offers nothing because AgStar already possesses a perfected security interest by virtue of § 552(b).  The Debtor cannot provide adequate protection by giving AgStar what it already has.  In order to justify use of cash collateral, it has to supply adequate protection from some other source.  The Debtor cannot do so.  The Debtor cannot meet its burden under 11 U.S.C. §§ 361 and 363 and under the *Martin* rule.

---

[1]"The Debtor acknowledges that the present fair saleable value of its assets is less than the amount of its debt, probably less than the secured debt."  (Doc. 52 at 4.)

## II.     Facts.

The facts presented in this pre-hearing brief are as AgStar believes the evidence will demonstrate.  Debtor filed a voluntary Chapter 11 Petition on July 2, 2010.  (Doc. 1.) Debtor then filed a Motion to Use Cash Collateral (Doc. 16) and Supplement (Doc. 38). AgStar filed an objection to Debtor's interim and final motions for cash collateral usage. (Doc. 53.)  The cash-collateral issue has now been scheduled for hearing.  (Doc. 65.)  As of the Petition date, Debtor owed AgStar over $45 million in principal and interest on multiple obligations, including over $33 million in principal, interest, and late charges on multiple promissory notes, protective advances of approximately $1.5 million, related services in the amount of $448,466.55 as of April 1, 2010, plus subsequent accruing related services, and is also contingently indebted to AgStar FLCA by virtue of a Letter of Credit in the amount of $10,144,150.69, which has not been, but could be, drawn upon at any time.

As security for these obligations, the Debtor executed security agreements in AgStar's favor.  The security agreements pledged a broad range of collateral including, but not limited to, farm products including milk and milk proceeds.  AgStar perfected these security interests by timely filing UCC-1 financing statements with the Secretary of State.  AgStar, as a result, holds a valid and perfected first position blanket security interest in Debtor's agricultural and business personal property.

Debtor has been in default of those obligations for some time.   And it has only been through AgStar's infusion of $1.5 million in capital in the form of protective advances since March 1, 2010, that Debtor has remained in operation.

Debtor and Debtor Veblen West Dairy Limited Partnership are part of an integrated dairy production system together with Debtor's general partner, The Dairy Dozen-Veblen, LLP, which has filed bankruptcy in the District of South Dakota, Case No. 10-10147, The Dairy Dozen-Milnor, LLP, which has filed bankruptcy in the District of North Dakota, Case No. 10-30377, The Dairy Dozen-Thief River Falls, LLP, which has filed bankruptcy in the District of Minnesota, Case No. 10-60438, along with New Horizon Dairy, LLP, Vantage Cattle Company, LLP, and Short Foot Calf Ranch, Inc.

All of the dairy entities have been managed primarily by Prairie Ridge Management, LLC ("PRM"), which in turn is directed and managed by Rick Millner.  In addition, there is common, but not mirror image ownership and management of these various entities, including most particularly, Rick Millner.  The underlying owners of some of the entities are also personal guarantors of the AgStar debt and do business with some of the entities.  AgStar incorporates by reference here all of the facts, law, and argument alleged in its Motion to Appoint Chapter 11 Trustee in West's Chapter 11 Case No. 10-10071 at Doc. 250, rather than restating them.

Prior to filing, Debtor was under a State Court receivership ordered by the Minnesota District Court, CIV.10-714, and an ancillary appointment of that receiver by

Order entered in Marshall County State Circuit Court on March 23, 2010.  Value-Added Science & Technologies, L.L.C., acting through Steven Weiss, its Manager, was serving as court-appointed Receiver on the date of filing.

The Debtor has acknowledged that its facilities and cow herd are in excellent condition, that it has a solid group of employees, and that its production numbers are strong relative to the dairy production industry in general.  (Doc. 16 at ¶ 15.)  The receiver has apparently been doing a laudable job in attempting to keep Debtor operating.

## III.    Argument

Because Debtor is asking for permission to use cash collateral, it has an obligation to provide AgStar with adequate protection.  *See* 11 U.S.C. §§ 361 and 363(e).  Debtor has the burden of proof regarding whether its cash-collateral plan provides adequate protection.  *See* 11 U.S.C. § 363(p)).  In analyzing whether Debtor has provided adequate protection  for AgStar's interests, the court must (1) establish the value of AgStar's interest; (2) identify the risk to AgStar's interest resulting from the Debtor's request for use of cash collateral; and (3) determine whether the Debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of "indubitable  equivalence."  *See In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985); *In re Monnier Brothers*, 755 F.2d 1336 (8th Cir. 1985).

**A.     AgStar's interest is valuable, and is the only interest truly at risk.**

The value of AgStar's interest is both considerable and undisputed.  Debtor still owes AgStar over $45 million as of April 1, plus over $6,000 per day thereafter in interest and late charges.  The risk to that interest if Debtor is permitted to use cash collateral is also substantial, given the multiple but unsuccessful efforts AgStar has already made to help the Debtor work through its financial situation.  The Debtor has insufficient funds to cover current operational costs and fully service all of its debt.  The Debtor's chances of a successful reorganization are bleak at best.  *See Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.)*, 191 B.R. 320 (Bankr. E.D.Va. 1996) (holding that use of cash collateral would not be authorized in light of dim prospects of reorganization); *In re C.F. Simonin's Sons, Inc.*, 28 B.R. 707, 713-14 (Bankr. E.D.N.C. 1983) (requiring greater adequate protection in light of low prospects for successful reorganization); *cf: United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 484 U.S. 365, 375-76 (1988) (describing showing that must be made in context of stay relief sought for lack of adequate protection as a "reasonable possibility of a successful reorganization within a reasonable time").

The equity security holders of the Debtor and the Debtor's management have no real risk in this case.  The same can be said of the unsecured creditors.  Given Debtor's admission in its response to AgStar's motion under 11 U.S.C. § 543(d) that AgStar is

under-secured (Doc. 52 at 4), and lack of any allegation that there is an "equity cushion" available, it is solely AgStar that is at risk.

### B.    Debtor's proposed adequate protection is inadequate.

Under 11 U.S.C. 361 there are three general ways to provide adequate protection: (1) periodic cash payments sufficient to cover the decrease in the value of the property; (2) replacement liens sufficient to cover any decrease in the value of the property; (3) providing some other protection that will result in the secured creditor realizing the "indubitable equivalent" of its interest in the property.  Debtor claims it will adequately protect AgStar's substantial interests against these risks by making interest-only payments on its existing obligations to AgStar, and by granting AgStar post-petition "replacement liens" identical to those AgStar held as of the date of its bankruptcy petition.  (Doc. 16 at ¶ 7.)  *See* 11 U.S.C. § 361(2).

Debtor has asked the court to allow it to use over $1.7 million in proceeds generated from the sale of AgStar's collateral, including proceeds from the sale of milk between now and the end of July, and an additional $2.9 million to $3.4 million per month thereafter.  (Doc. 16 at 14-16, Doc. 38.)  The Debtor's interest-only payments will clearly be insufficient to protect the periodic dissipation of millions of dollars in secured collateral.  The Debtor's conclusory statement that it will "operate its business to maximize the value of AgStar's collateral" (Doc. 16 at ¶ 7(iii)) offers little comfort as well.  Despite admitting that the receiver has maintained the Debtor's herd, facilities,

employees, and milk production in admirable fashion (Doc. 16 at ¶ 15), it has only been

through AgStar's infusion of approximately $1.5 million in protective advances that the

Debtor has remained in operation.  There is no reason to believe that the Debtor will fare

any better in relieving AgStar's risks through operations.

This leaves the Debtor with the option of providing replacement liens.  The most

significant of the replacement liens Debtor proposes to grant are liens in the milk Debtor

produces, which accounts for the majority of the revenue generated by the Debtor's

activities.  But Debtor's proposal to grant AgStar a post-petition lien in milk proceeds is

an illusory one.  As this Court has already ruled under similar circumstances with regard

to AgStar's interests relative to West in Case No. 10-10071, AgStar already has a

security interest in Debtor's post-petition milk.  (Case No. 10-10071 at Doc. 265.)

The filing of a bankruptcy petition may cut off certain pre-petition security

interests in after-acquired property.  *See* 11 U.S.C. § 552(a).  However, under 11 U.S.C.

§ 552(b), when a secured creditor's security agreement includes "milk" and "products or

proceeds" provisions, and applicable state law defines "farm products" broadly enough

to include milk, that interest survives and attaches to all milk produced post-petition.  In

*Smith v. Dairymen, Inc.,* the court rejected the argument that "milk produced post-petition

is an asset coming into existence totally after the filing and not intended to be covered by

the 552(b) exception" and held that:

> The notion that § 552(b) was not intended to apply to such assets is
> undercut by the language of the statute itself, which extends coverage to

"offspring, rents, or profits" derived from property acquired pre-petition, all of which quite clearly are "assets coming into existence totally after the filing."

790 F.2d 1107, 1112 (4th Cir. 1986) (Virginia law)

Similarly, in *In re Nielson*, the bankruptcy court had denied a motion by a creditor to prevent a Chapter 11 debtor from using proceeds from its sale of milk. 48 B.R. 274, 275 (D.N.D. 1984). The district court on appeal held that 11 U.S.C. § 552(b) "recognizes a distinction between after-acquired property and proceeds generated from prepetition collateral." *Id.* at 276 (citing Collier on Bankruptcy § 552.02 (1984)). The appellate court followed the rationale of *Smith*, reversed the bankruptcy court's decision, and prevented the debtor from using the proceeds.

Numerous other courts have agreed with the rationale of *Smith* and declined to cut off security interests in milk produced by the debtor post-petition when the security agreement extends to "products and proceeds." In *re Wiegmann*, 95 B.R. 90, 93 (Bankr.S.D. Ill.1989); *In re Rankin*, 49 B.R. 565, 570 (Bankr.W.D. Mo. 1985) (holding that Chapter 11 debtor had improperly used cash collateral when it apparently used milk proceeds for operational expenses, and granting creditor priority administrative claim); *In re Potter*, 46 B.R. 536, 538-39 (Bankr.E.D. Tenn. 1985) (holding that security interest in farm products included milk produced post-petition); *Beacon Milling Co., Inc. v. Clark (In re Clark)*, 47 B.R. 88, 89 (Bankr. D.Vt. 1985) (citing 11 U.S.C. § 552(b) and enforcing security agreement regarding milk proceeds). In *In re Hollie*, for instance, the

court held that the secured creditor's interest included post-petition milk, and denied a
request for permission to use cash collateral milk sale proceeds.  42 B.R. 111, 120
(Bankr.M.D. Ga. 1984).[2]

The security agreements executed by Debtor in favor of AgStar indicate that
AgStar's security interests include "products or proceeds" and "milk," and South Dakota
law defines "farm products" broadly to include any "products of livestock in
unmanufactured states."  *See* SDCL § 57A-9-102(34)(D); *see also* SDCL § 57A-9-102
cmt. 4(a) ("[g]oods are 'farm products' if the debtor is engaged in farming operations
with respect to the goods...Products of crops or livestock remain farm products as long as
they have not been subjected to a manufacturing process").  AgStar therefore already
possesses a post-petition lien in proceeds of milk sales.

AgStar anticipates that Debtor will hedge its position with an alternative
argument, and claim that if the Court interprets § 552(b) literally, as it did with regard to
West, the Court should still allow it to use AgStar's cash collateral because of the

---

[2]There is a contrary view reflected in a line of cases from Minnesota and a single
case from North Dakota.  *See, e.g., In re Lawrence*, 41 B.R. 36 (Bankr.D.Minn.1984),
*accord, In re Jackels*, 55 B.R. 67 (Bankr.D.Minn.1985); *In re Serbus*, 48 B.R. 5
(Bankr.D.Minn.1984); *see also In re Pigeon*, 49 B.R. 657 (Bankr.D.N.D.1984).
However, as noted in the line of cases cited in the main text, this view is a decidedly
minority one, and even the North Dakota Bankruptcy Court has noted that the North
Dakota District Court has joined the majority view.  *See Western Cooperative Credit
Union v. Kraft (In re Kraft)*, 1991 WL 1301301 (Bankr.D.N.D.) ("[a]lthough there
continues to be case law going both ways, the majority view now seems to favor the
*Nielsen* position that milk produced post-petition is a 'product' of livestock within the
meaning of section 552(b)").

equities of the case.  But Section 552(b)'s "equities of the case" language is not intended as a blank check for a court to simply ignore the plain meaning of § 552(b) and the majority of the cases that have accurately interpreted it.

Courts have construed the equity of the case language contained in 552(b) narrowly.  "The equity exception is meant for the case where the trustee or debtor in possession uses other assets of the bankruptcy estate (assets that would otherwise go to the general creditors) to increase the value of the collateral."  *Jake Haddon Farms vs. First National Bank of Chicago*, 779 F.2d 1242, 1246 (7th Cir. 1985).  The cases where courts have found that the "equities" language of Section 552(b) applied have featured two common themes: (1) an over-secured creditor; and (2) a significant contribution by the debtor and third parties to the overall value of the collateral at issue.  *In re Lawrence*, 41 B.R. 36 (Bankr. D.Minn. 1984) (noting investments by debtor in operation and that bank was oversecured); *In re Serbus*, 48 B.R. 5, 8 (Bankr. D.Minn. 1984) (noting bank was oversecured); *In re Vanas*, 50 B.R. 988 (Bankr. E.D.Mich. 1985) (creditor was oversecured and had advanced no value).

Here, the Debtor has admitted in its response to AgStar's motion under 11 U.S.C. § 543(d) that AgStar is under-secured.  (Doc. 52 at 4), and there is no mention of any "equity cushion" in its Motion regarding cash collateral.  And the Debtor is using, and proposes to use, neither other assets of the estate, nor contributions of third parties, to increase the value of the collateral, i.e., to produce milk.  As noted by the various

categories of income and expenses disclosed in Debtor's projection documents, Debtor is using *AgStar's funds* to pay for the feed, labor, and equipment that are used to produce the milk.  (*See* Doc. 16.)  In sharp contrast to the debtors' contributions in the cases cited, Debtors' ostensible independent contribution of value would be illusory.  AgStar's contribution is real.

Under similar facts involving a creditor's continuing lien in a Chapter 11 debtor's calf crop under 11 U.S.C. § 552(b), the North Dakota Bankruptcy Court noted that the debtor's offer of a replacement lien in the calves could not serve as adequate protection for debtor's use of calf-sale proceeds, since the creditor already had the lien.  *See In re Bohne*, 57 B.R. 461, 463-64 (Bankr. D.N.D. 1985) ("[i]f as the bank claims, it has a continuing interest in the 1986 calf crop, then without even reaching the question of indubitable equivalence, those animals cannot serve as adequate protection for the use of the bank's cash collateral").

Debtor's proposal here is no different.  The Debtor's proposed "adequate protection" is really no protection at all.  Debtor is essentially proposing that it be allowed to use proceeds from the sale of AgStar's secured collateral to pay operating expenses, while simultaneously failing to maintain the value of AgStar's secured assets through genuine means of adequate protection.  Debtor cannot show that AgStar will be able to recover the value of its cash collateral if it is depleted.  Regardless of the accuracy of Debtor's projections regarding income and expenses, a significant amount of Debtor's

projected income will be derived from milk sales.  Consequently, Debtor cannot possibly give AgStar adequate protection by "granting" liens in the milk that AgStar already has. The Debtor has failed to meet its burden under 11 U.S.C. §§ 361, 363, and under *Martin*. It simply cannot provide adequate protection for use of cash collateral by providing AgStar a lien in post-petition milk or milk proceeds that AgStar already possesses.  The Debtor has to do more than that to meet its burden.

## IV.    Conclusion

The Debtor has not claimed that AgStar is adequately protected because it is oversecured, nor has it alleged that replacement liens are available in collateral with equity.  This is fatal both to Debtor's claim that it will provide adequate protection, or any potential claim Debtor may make that the equities favor cutting off AgStar's lien. And the Debtor cannot provide adequate protection by giving AgStar what it already has–a lien in post-petition milk and the proceeds from post-petition milk.  It has to supply adequate protection from some other source.  The Debtor cannot do so.  Its proposed interest-only payments are dwarfed by the value of the collateral it wishes to use, and its claims of future positive cash-flow are belied by the fact that Debtor has only remained in operation because of AgStar's infusion of protective-advance capital.  AgStar respectfully requests that the Debtor's request to use cash collateral be denied.

Dated this 13th day of July, 2010

WOODS, FULLER, SHULTZ & SMITH P.C.

By /s/ ROGER W. DAMGAARD
    Roger W. Damgaard
    Sander J. Morehead
    300 South Phillips Avenue, Suite 300
    Post Office Box 5027
    Sioux Falls, South Dakota 57117-5027
    Telephone (605) 336-3890
    Fax No. (605) 339-3357

and

    Gary W. Koch
    Dustan J. Cross
    GISLASON & HUNTER LLP
    2700 S. Broadway
    P. O. Box 458
    New Ulm, MN 56073-0458
    Phone: 507-354-3111
    Fax:  507-354-6310

    ATTORNEYS FOR AGSTAR FINANCIAL
    SERVICES, PCA AND AGSTAR
    FINANCIAL SERVICES, FLCA